**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DALENA M. TAVERNITI, *et al.*, | No. C 04-04932 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket Nos. 75-76] |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**REQUEST BEFORE THE COURT**

Before the Court is plaintiff Maraina Arik's Motion for Summary Judgment (the "Motion") [Docket No. 75], defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion (the "Cross-Motion") [Docket No. 76], and Arik's Opposition to Defendant's Cross-Motion and in Support of Plaintiff's Motion (the "Reply") [Docket No. 77]. Arik disputes defendant's denial of her request, filed under Social Security Ruling ("SSR") 91-5p, for an extension of time to seek judicial review of a denial of disability benefits. For the reasons discussed below, the Court GRANTS the Motion, DENIES the Cross-Motion, REVERSES defendant's decision, and REMANDS this matter to defendant for proceedings in accordance with this Order.

**BACKGROUND**

**I.    General Information**

Arik, born in 1973, is an approximately 34-year old, single, European-American woman, of above-average intelligence, diagnosed bipolar. Adm. Record ("AR") at 290. Her parents divorced when she was one, and her father took custody of her at three. AR at 289. On her mother's side, there is a history of manic disorder and alcoholism. AR at 250, 289. Although an academic high achiever, she dropped out in the tenth grade, though later earned her G.E.D. *Id.* At 18, she left her father's home, to move in with a boyfriend, as discussed below. *Id.*

///

1   **II.     Arik applies for disability benefits in propria persona.**

2           On February 16, 1995, Arik filed an application with the Social Security Administration (the

3   "SSA") for disability benefits under subchapter II of the Social Security Act, 42 U.S.C. § 401 *et*

4   *seq.*, which governs old age, survivors, and disability insurance (OASDI) benefits. AR at 81.[1] On

5   March 13 ,1995, she completed a Disability Report, providing detailed information about her work

6   and medical history, indicating manic depression affected her ability to work and caused her both

7   insomnia and to sleep too much. AR at 112-17. She also indicated she suffered from low blood

8   pressure, as well as anxiety and panic attacks. AR at 112-17. The SSA interviewed her on March

9   19, 1995 and found she could speak English, required no assistance with prosecuting her claim, and

10  had no difficulty reading, writing, or understanding. AR at 118-19. In April 1995, she and her

11  father completed Daily Activities Questionnaires. AR at 128-135. She noted she often had

12  difficulty concentrating and going to sleep as well as waking up. *Id.* Her father noted she had

13  recently moved in, as she had difficulty living on her own or with roommates.[2] AR at 132-35. He

14  also noted she had difficulty concentrating, sleep issues, and was often depressed or manic. *Id.*

15  Further, she had issues with fainting and seizures, which along with the manic episodes made her

16  afraid to go out. *Id.*

17          On July 21, 1995, the SSA denied Arik's application. AR at 84. On August 3, 1995,

18  defendant sent a notice to Arik stating that while she alleged manic depression prevented her from

19  working, defendant believed treatment would alleviate her condition in under 12 months, the

20  required minimal duration for a "disability" under federal law. AR at 97-98. The notice instructed

21  Arik that she had 60 days to appeal and how to do so. AR at 99.

22          Arik did not timely appeal. On or about January 2, 1996, Arik filed an unsigned Request for

---

[1]  Arik also filed for disability benefits under subchapter XVI, 42 U.S.C. § 1381 *et seq.*, which governs supplemental security income for the aged, blind, and disabled. AR at 81, 98, 101. She withdrew this claim, however, a few days after her administrative hearing, in December 1998. AR at 315.

[2]  Arik had difficulty functioning alone, but roommates tended to take financial advantage of her. AR at 188-89.

Reconsideration.[3] AR at 101. Arik stated, "I've [sic] been disabled since October 1993. Due to severe depression & mania I <u>could not</u> care for myself (or work) from 9/93. (See attached sheet[.])" *Id.* (underlined text is double underlined in original). The attachment states, "When my condition lessened and I attempted to work I developed carpal tunnel syndrome. Prior correspondents [sic] will explain why claim is late." AR at 102.

Another attachment states that when Arik received the denial notice, she called an 800 number to request certain forms, which the woman to whom she spoke said would be sent, but no forms were received. AR at 103. Arik then called again, and received the forms, which she mailed in December 1995, but unsigned. AR at 101, 103. She was also supposed to have an evaluation on February 14, 1996, but failed to keep this appointment. AR at 103. She tried to call the SSA to explain this, but could not reach anyone. *Id.* On May 23, 1996, she went to an SSA office to explain this, where she wrote out this attachment and resubmitted her Request for Reconsideration. AR at 101, 103. In it, she wrote, "my medical conditions make it very difficult for me to follow what at times seems to be confusing and/or contradictory information." AR at 103. During her May office visit, she completed a Reconsideration Disability Report, indicating a "continued inability to concentrate due to manic depression." AR at 120.

On May 29, 1996, an SSA interviewer found Arik could speak English, and had no difficulty reading, writing, or understanding. AR at 118-19. The interviewer also noted, however, that Arik presented with her father, for assistance.[4] AR at 124. The interviewer concluded there was good cause for her late filing of her Request for Reconsideration. *Id.*

The SSA scheduled Arik for an examination on August 18, 1996. AR at 107. She failed to attend it, however, and she failed to contact the SSA to explain why. AR at 106-07. The SSA sent her a follow-up letter, to which she did not respond. *Id.* And, she failed to return certain paperwork. AR at 106. As a result, her claim was denied on November 25, 1996. AR at 107. A notice was sent

---

[3] The form has a handwritten notation at the top, which states, "second request 10-12-95." AR at 101. The parties do not explain this notation.

[4] Although he has attempted to assist his daughter, in her adulthood, he has been able to only provide limited financial and emotional support. AR at 189, 289. Arik's mother resides in Indiana, allegedly on AFDC. AR at 189.

3

1 to her which advised her she could appeal in 60 days and how to do so.  AR at 107-10.

2 ///

3 On December 27, 1996, Arik timely filed a Request for Hearing by Administrative Law

4 Judge.  AR at 111.  She stated, "You say my condition is not expected to keep me from working for

5 12 mos. in a row.  My conditions have <u>already</u> kept me from regular work for 3 years."  *Id.*  On

6 December 23, 1996, she completed a Claimant's Statement when Request for Hearing is Filed,

7 listing her treating providers and medications.  AR at 126-27.

8 On January 6, 1997, Administrative Law Judge ("ALJ") James M. Kaplan, sent Arik a letter,

9 requesting she complete certain forms enclosed with his letter, and send him her evidence, witness

10 lists, *et seq.*, as described therein.  AR at 265.  He also advised her she could appear with an attorney

11 or a non-attorney representative.  AR at 266.  Arik completed a Medical and Vocational Statement.

12 AR at 267-69.  In it, she wrote:

13 > Im [sic] depressed most of the time.  Im [sic] always worried and scared.
14 > When I do try to function I get overly excited and can't concentrate.  Im [sic] always
15 > losing and forgetting things.  It was very stressful for me to write this and answer
16 > these questions.  Im [sic] afraid to go out because of blackouts, memory lapses or
17 > seizures. . . .  I was diagnosed manic-depressive and having a seizure disorder and
18 > having carpal tunnel in both wrists."

19 AR at 270.

20 She also prepared and submitted a witness list, including treating physicians, therapists, and

21 employers.  AR at 271.

22 On or about October 23, 1997, Judge Kaplan sent Arik a Notice of Hearing for April 7, 1998.

23 AR at 272-74.  She did not, however, complete or return the accompanying Acknowledgment of

24 Notice of Hearing.  AR at 275.  On March 31, 1998, Judge Kaplan sent Arik notice to this effect,

25 and she returned the acknowledgment on or about April 1, 1998.  AR at 276-77.  She also notified

26 Judge Kaplan she had moved, and provided her new address.  AR at 277.  For reasons not stated in

27 the record, the April hearing did not go forward.

28 ///

4

### III. Arik retains an attorney and has an administrative hearing.

On or about July 9, 1998, Arik retained Ian M. Sammis, Esq.[5] AR at 278. The hearing was continued to December 15, 1998. *See* AR at 305. Both Sammis and Arik filed acknowledgments for the new date. AR at 308-09.[6] The hearing went forward as scheduled. AR at 318.

On January 26, 1999, Judge Kaplan issued his Notice of Decision, which was partially favorable and unfavorable, finding Arik disabled as of March 2, 1998, but not for a prior period beginning on August 1, 1993. AR at 60, 70-71. The notice explained Arik had 60 days to appeal and how to do so. AR at 60-61. In his Decision, Judge Kaplan noted Arik claimed disability beginning August 1, 1993 due to manic depression. AR at 64. He then reviewed her entire record and analyzed her claim under the SSA's five-step disability determination process.[7] In step one, he found Arik had performed "substantial gainful activity" from early 1995 through May 1996, but not after this time. AR at 65. In step two, he found she had the severe impairments of bipolar disorder and carpal tunnel syndrome, but in step three, he found they were not "severe" as "listed impairments." *Id.*

In step four, he proceeded to determine her "residual functional capacity" ("RFC") due to her impairments. *Id.* He found that in 1993, when her records began, she presented at a Kaiser Permanente facility for mental health treatment. *Id.* Arik also had a significant substance abuse

---

[5] This is her current counsel.

[6] In her acknowledgment, Arik switched back to using her prior address. AR at 309.

[7] The five steps of the inquiry are: (1) Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). (2) Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). (3) Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). (4) Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). (5) Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). *See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

1 history, going back to the eighth grade, and in 1993 was undergoing amphetamine withdrawal. *Id.*
2 Further, she had recently terminated a pregnancy, after the father left her for another woman, leading
3 to situational depression. *Id.* In 1993 and 1994, doctors put her on the anti-depressants Prozac and
4 Trazodone. AR at 66.

5       In January 1995, she had a two-week drug binge, leading to a hospitalization and Haldol
6 treatment. *Id.* At discharge, she still tested positive for amphetamines and marijuana, but was alert,
7 cooperative, and had no hallucinations or delusions. *Id.* About two months later, she stopped taking
8 the Haldol, leading to an emergency room visit due to auditory hallucinations. *Id.* This led to
9 therapy and a course of Lithium, which seemed to stabilize her enough to hold a job in a deli. *Id.*
10 According to Gerald Hill, M.D., a psychiatric consultative examiner who saw her in July 1995, the
11 work was satisfactory, but Arik was always 10 to 15 minutes late. AR at 67. He diagnosed her as
12 bipolar. *Id.* He also found she could concentrate with difficulty, and during his exam, concluded
13 she was "not able to be responsible today." *Id.* In August 1995, Arik was taking Lithium and
14 Prozac, and pain killers for wrist pain. AR at 66.

15       In January 1996, she began taking Depakote to combat seizures. *Id.* Treating records
16 indicated she had not had one for many years,[8] and felt well enough to drive. *Id.* Her records
17 showed no mental health treatment from February 1996 through March 1998. AR at 67. In March
18 1998, Arik resumed mental health treatment. *Id.* In September 1998, Dr. Hill again saw Arik, and
19 found her ability to maintain attention or concentrate was "poor to none." *Id.* She reported using
20 Prozac, Lithium, Depakote, and Elavil.[9] *Id.*

21       Judge Kaplan noted in Arik's Daily Activities Report from early 1995, she indicated she
22 could shop for groceries, cook, do laundry, wash the dishes, watch television, go to movies, walk,
23 ride the bus, hitchhike, go to the mall, do aerobics at the gym, read self-help books on mental illness,
24 do crossword puzzles, call friends and relatives, visited friends several times a week, went to the
25 library, was trying to get on a softball team, and taking sign language classes. AR at 68-69. From

---

[8] The most recently documented fainting or syncope episodes in the record are found in 1992, some of which also involved minor head injuries due to falls to the ground. AR at 204.

[9] Judge Kaplan does not discuss Elavil's use or purpose.

6

1990 through 1993, Arik had worked as a waitress. AR at 68. Judge Kaplan found she could have performed this "past relevant work" from August 1, 1993 through December 1994, as no physician indicated she could not do so during this time. *Id.* From early 1995 through May 1996, Judge Kaplan also found Arik either was engaged in a substantial gainful activity, or could have been. AR at 69. He noted aside from her hospitalization, she worked in a deli and as a market research interviewer in a mall, and that her mental health treaters did not consider her permanently disabled, at this time. *Id.* From May 1996 through March 1998, he found she could have continued her market research position, and in fact did occasionally work two days a week, handing out promotional materials for clubs or bars. AR at 70. Because Arik had the RFC to perform past relevant work from 1995 through March 1998, Judge Kaplan did not find her "disabled" during this time. *Id.*

From March 1998 and beyond, however, when she resumed regular treatment, he found she had an RFC for "no sustained work activity on a regular and continuing basis at any exertional level." AR at 70-71. This was based on Dr. Hill's examinations, her testimony, and the records as a whole, all of which he found consistently supported finding a severe mental health impairment. AR at 71. Proceeding to the step five, Judge Kaplan found her unemployable, that her severe impairment would not change for at least 12 continuous months, and drugs and alcohol were not a currently contributing factor to it. *Id.* In particular, Judge Kaplan found Arik had affective disorders of a bipolar nature, with moderate restrictions on the activities of daily living, moderate difficulties maintaining social functioning, frequent concentration deficiencies, and repeated episodes of deterioration or decompensation in a work setting causing withdrawal therefrom. AR at 79-80.

**IV.   Post-Hearing Developments**

As of the effective date of March 2, 1998, Arik was entitled to disability benefits, and continues to presently receive them. Docket No. 43 ¶ (3)(c). Nonetheless, she wanted to receive benefits for the period from August 1, 1993 through March 1, 1998. Disappointed in her counsel's efforts to secure medical records for her hearing, which she believed would have obtained her these

1  benefits, she terminated him. AR at 43.[10] He explained how the 60-day appeal process worked, and
2  offered to file an appeal. *Id.* She declined and requested her file, which he produced, though he
3  believed her too disabled to prosecute her appeal. *Id.*

4  On March 17, 1999, Arik timely filed a Request for Review of Hearing Decision. AR at 57.
5  In it, she states, "My onset date of disability is <u>way</u> earlier than the date Judge Kaplan granted me
6  disability from (Hearing date 12/15/98) 1/26/99 decision[.] There is much incorrect information in
7  Judge Kaplans [sic] denial reasons for my full disability benefits[. A]s well it is very obvious that
8  much evidence has been overlooked." AR at 58-59. The form was blank where contact information
9  is provided for an attorney or a non-attorney representative, if any. AR at 57. As her contact
10 information, Arik provided the same address she had used for all her other forms, except it did not
11 match the address she had indicated as her new one, in April 1, 1998. AR at 57, 277.

12 On March 14, 2000, the SSA's Appeals Council denied her request for a review. AR at 55.
13 The Council advised she had 60 days to file in federal court if she wished to appeal, and how to do
14 so. AR at 55-56. The denial was sent to the address in her Request for Review, and copied to her
15 ex-counsel. *Id.* Arik did not timely sue in federal court.

16 More than four years later, on or about September 27, 2004, Arik requested a hearing under
17 SSR 91-5p.[11] AR at 54. In her form, she stated, "I be awarded a 91-5p hearing for reopening my
18 prior claims because I was without counsel at the time my appeal lapsed and my mental disability
19 precluded me from affecting an appeal." *Id.* This form showed she now had a non-attorney
20 representative assisting her. *Id.*

21 On November 19, 2004, Arik sued in the matter before the Court, having once again retained
22 Sammis. *See* Docket No. 1. In her complaint, she alleged the SSA was dragging its feet in

---

[10]  This evidence comes from January 31, 2005 declaration made by Sammis. AR at 43. Immediately behind this document in the record, is a handwritten statement, purportedly made by Arik on February 1, 2005. AR at 44. It states that shortly after she received her denial, she terminated Sammis, then tried unsuccessfully to get another attorney. *Id.* She then did not file an appeal, "because the whole case was too stressful for me and I couldnt [sic] handle it any more. I was seeing a psychiatrist at the time but I don't remember their name." *Id.* The statement is neither notarized not made under penalty of perjury. *See id.*

[11]  This SSR is discussed in part II of the Legal Standard section, *infra*.

8

1  ///

2  ///

3  ///

4  complying with an Order issued by this Court which mandated she receive a hearing under

5  SSR 91-5p.[12]  *Id.* at ¶ 3.[13]

6  On March 3, 2006, an ALJ dismissed Arik's request for a 91-5p hearing, for lack of

7  jurisdiction, as she had to file it directly with the Appeals Council.  AR at 19-22.  On March 15,

8  2006, Arik filed a request with the Appeals Council to review this dismissal.[14]  AR at 7.  On April 6,

9  2006, the Appeals Council denied her request.  AR at 4.

10  The Council, however, considered her request under SSR 91-5p for an extension of time to

11  sue in federal court.  AR at 5.  It considered her allegation that she failed to timely appeal in March

12  2006, due to her alleged mental incompetency and her alleged lack of counsel.  *Id.*  It found she

13  timely appealed in propria persona, Judge Kaplan's decision.  *Id.*  And in doing so, it noted she

14  explained why she disagreed with his decision.  *Id.*  Further, the Council noted:

15  > You have a limited education and semi-skilled past relevant work. . . .  You

16  > receive disability benefit directly, without a representative payee.  You were able to

17  > articulate events which took place well into the past, indicating facility in the English

18  > language.  Furthermore, no contemporaneous documents show that you were

19  > unrepresented at the time the Appeals Council explained your right to commence a

20  > civil action.

21  *Id.*

---

[12]  This Court issued no such Order.  This Court issued an Order on August 25, 2004, in *Taverniti v. Barnhart*, case 03-04126, an earlier suit brought by Arik's co-plaintiff in this matter, whose claims in this matter, the Court dismissed on March 31, 2008.  *See* Docket No. 57.  Arik was not a party to her co-plaintiff's earlier suit.  Further, the Order in question merely dismissed the earlier suit for lack of subject matter jurisdiction due to the plaintiff's failure to exhaust administrative remedies, i.e., because she had not requested a hearing under SSR 91-5p.

[13]  The Court omits discussing a subsequent lengthy discovery dispute over defendant filing the record, as it is irrelevant to disposing of the motions before the Court.

[14]  The Court notes that all the record contains is fax cover sheet referencing an attached request, but no actual request.  AR at 7.

1  The Council concluded, "you have a severe mental impairment, but the record does not show that
2  you lacked the mental capacity to understand the procedures for requesting review, as contemplated
3  ///
4  in" SSR 91-5p. *Id.* On these reasons, the Council denied Arik's request for an extension of time to
5  sue in federal court. AR at 6.
6  On August 28, 2006, back in this Court, Arik filed an Amended Complaint. *See* Docket
7  No. 45. In it she alleged three claims. First, she claimed due process entitled her to judicial review
8  of the Appeals Council's denial of an extension of time to seek district court review, under SSR
9  91-5p. *See* Docket No. 53 at 3:12-13, 4:3-10, 4:12-14. Second, she claimed she had stated a
10 constitutional claim mandating the SSA give her a hearing under SSR 91-5p. *Id.* at 3:8-10, 4:10-12.
11 Third, she claimed the SSA had violated her due process by unduly delaying the administrative
12 process, possibly because she had sued it. *Id.* at 3:10-12, 4:13-14. The SSA filed a motion to
13 dismiss on December 8, 2006, claiming the Court had no subject matter jurisdiction, as Arik had
14 failed to state a colorable constitutional claim. *See* Docket No. 52. The Court denied with regards
15 to the first claim, granted with regards to the second claim, which had been mooted as she had
16 received a hearing under SSR 91-5p, and denied with leave to amend with regards to her third claim.
17 *See* Docket No. 57. Arik then declined to amend her third claim, waiving it. *See* Docket No. 66.
18 The Court having set a briefing schedule after Arik's waiver, the parties then filed the cross-motions
19 for summary judgment now before it.

**LEGAL STANDARD**

21 **I.   Summary Judgment**

22 Summary judgment is appropriate if no genuine issue of material fact exists and the moving
23 party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,
24 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there
25 are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029,
26 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could
27 return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
28 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if

1  its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d
2  at 1146.
3  ///
4      In responding to a properly supported summary judgment motion, the non-movant cannot
5  merely rely on the pleadings, but must present specific and supported material facts, of significant
6  probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*
7  *Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th
8  Cir. 2002); *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a
9  genuine issue of material fact exists, the court views the evidence and draws inferences in the light
10 most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of*
11 *the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564,
12 568 (9th Cir. 2004).
13     These same standards apply when parties file cross-motions for summary judgment. *See*
14 *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); *ACLU of N.M. v.*
15 *Santillanes*, 506 F. Supp. 2d 598, 624 (D.N.M. 2007).

**II.   Social Security Ruling 91-5p**

"It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his [or her] claim for disability benefits may be denied." *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) (*citing Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).[15] In 1991, the SSA issued SSR 91-5p:

> which provides that if a claimant presents evidence that mental incapacity prevented
> him [or her] from requesting timely review of an administrative action, and the

---

[15] The Court's disposition of this matter is governed by three Ninth Circuit cases addressing the operation of SSR 91-5p: *Klemm v. Astrue*, No. 06-16981, --- F.3d ----, 2008 WL 4210589 (9th Cir. Sep. 16, 2008); *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001), and *Evans v. Chater*, 110 F.3d 1480 (9th Cir. 1997). The Court declines Arik's invitation to consider an unreported and un-cited 2004 magistrate judge's report from the Middle District of Louisiana. Mot. at 8-12. The report not only turns on Fifth Circuit law, but without legal basis, applies the stricter standards used to determine mental impairments under the SSA's five-step *disability* analysis, found in 20 C.F.R. § 404.1520a, to a determination under SSR 91-5p, which mandates a more flexible four-factor analysis.

11

1    claimant had no one legally responsible for prosecuting the claim on his [or her]

2 ///

3 ///

4    behalf at the time of the prior adverse action, the SSA "will determine whether or not

5    good cause exists for extending the time to request review."

*Udd*, 245 F.3d at 1099 (*quoting* SSR 91-5p).

A "lack of representation by counsel is not required[,]" however, to state a colorable due process claim. *Udd*, 245 F.3d at 1099 n.3.

"The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review." *Udd*, 245 F.3d at 1099 (*quoting* SSR 91-5p). "In making the 91-5p determination, the following four factors must be considered: (1) inability to read or write; (2) lack of facility with the English language; (3) limited education; and (4) any mental or physical condition which limits the claimant's ability to do things for him/herself." *Udd*, 245 F.3d at 1099 (*citing* SSR 91-5p). "In all cases, '[t]he adjudicator will resolve any reasonable doubt in favor of the claimant.' " *Udd*, 245 F.3d at 1099 (*quoting* SSR 91-5p).

"If it is determined, applying the proper criteria, that the claimant lacked the mental capacity to understand the procedures for requesting review, time limits are tolled 'regardless of how much time has passed since the prior administrative action.' " *Udd*, 245 F.3d at 1099 (*quoting* SSR 91-5p). "In such cases, the adjudicator must 'take the action which would have been appropriate had the claimant filed a timely request for review.' " *Udd*, 245 F.3d at 1099-100 (*quoting* SSR 91-5p).

The Court "review[s] an ALJ's decision in a 91-5p hearing under the substantial evidence standard to determine whether the claimant lacked the requisite mental capacity at the time of the adverse benefits decision." *Udd*, 245 F.3d at 1100 (*citing Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997)). "If so, the termination of his [or her] benefits constitutes a due process violation. *Udd*, 245 F.3d at 1100. "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Evans*, 110 F.2d

at 1483 (quoting *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "Substantial evidence is 'more than a mere scintilla,' but 'less than a preponderance.' " *Evans*, 110 F.2d at 1483 (quoting *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (citations omitted)). "If the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision [a court] must affirm." *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002).

## ANALYSIS

The question before the Court is whether on the undisputed facts before it, Arik has established that she "lacked the mental capacity to understand the procedures for requesting review[]" during the 60 days following the Appeal's Council March 14, 2000 denial of her request for reconsideration. *Udd*, 245 F.3d at 1099 (*quoting* SSR 91-5p). Analyzing SSR 91-5p's four factors, for the reasons stated below, the Court finds she has.

**I.    Inability to Read or Write; Lack of Facility with the English Language; Limited Education**

Save for the issue of a lack of counsel, the parties do not dispute the facts upon which the Appeals Council predicated its holding. That is, Arik did timely appeal in propria persona Judge Kaplan's January 26, 1999 decision and explained her basis for doing so. Further, she attended school through the tenth grade, then earned her G.E.D. Defendant notes, under 20 C.F.R. § 404.1564(b)(3), achieving the 7th through 11th grades is considered to result in a "limited" education. Mot. at 8. Further, the record shows she has had semi-skilled past relevant work, and she does not dispute she receives her benefits directly. At her administrative hearing, defendant notes that Arik articulated events which took place well into the past, indicating her facility in the English language. *Id.* Arik does not dispute this, nor the fact that she can read and write, as evidenced by her ability to follow the directions in SSA forms which she filed by herself.[16] The parties disagree, however, how and to what extent Arik's abilities must be viewed through the lens of her documented severe bipolar impairment, with its manic and depressive cycles, which issue is

---

[16]  The Court notes, having reviewed the records, which contains a fair of amount of Arik's writings, all of it legibly handwritten, her facility with the English language is more than adequate.

properly addressed below, under SSR 91-5p's fourth factor.

Before turning to this issue, however, the Court discusses whether Arik lacked counsel during the 60 days following Judge Kaplan's decision. Although this issue is a trigger for a hearing under SSR 91-5p, rather than one of its four disposition factors, defendant felt the need to state, "no contemporaneous documents show that you were unrepresented at the time the Appeals Council explained your right to commence a civil action." AR at 5. Arik argues the ALJ who directed her to file her SSR 91-5p request with the Council, sent a letter to the Council on March 3, 2006, advising it that Arik had terminated Sammis back in 1999, after Judge Kaplan issued his split decision. Cross-Mot. at 8 (citing AR at 9). The Court notes this letter is not contemporaneous with the time of termination, which is the type of documentation the Council apparently sought. Nonetheless, the Court notes that Sammis is admitted to the practice of law in California and before this Court. *See* Docket No. 1 at 1. He declared under penalty of perjury that Arik dismissed him within 60 days after Judge Kaplan issued his decision. AR at 43. Absent conflicting evidence, this declaration by an officer of the Court on this issue settles the matter. The Court finds Arik was without counsel during this period.

**II.    Any mental or physical condition which limits the claimant's ability to do things for him/herself.**

Defendant raises four arguments that substantial evidence supported it decision that Arik did not lack the mental capacity to understand the procedures for requesting review after Judge Kaplan's decision. The Court finds none of them availing.

**A.    Arik's Understanding, Stress, and Confusion**

Defendant argues that by her own written statement, submitted in February 1, 2005, Arik "understood" the procedures for a timely appeal, because she states she unsuccessfully sought another attorney, but did not appeal because of "stress," rather than "confusion." Cross-Mot. at 7. Defendant argues this is substantial evidence that Arik's mental condition did not limit her such that she failed to understand the procedure for requesting review.

Arik raises two counter-arguments to show both stress and confusion were at issue. First she notes Judge Kaplan found that from August 1, 1993 through March 1, 1998 she was not severely

1  mentally disabled by bipolar disorder, but that she was disabled as such, as of March 2, 1998
2  through the present. Reply at 7-8. Thus, she asserts her status became worse from 1993 through
3  1998. *Id.* at 12. She further asserts there is no evidence in the record to support that it has become
4  better since 1998. *Id.*

5  Second, Arik asserts that given her state in 1998, there is not substantial evidence in the
6  record to find she failed to appeal from March through May 2000, for any reason other than her
7  mental impairment. Arik notes that Judge Kaplan found her disabled based on Dr. Hill's September
8  1998 finding that her ability to maintain attention or concentrate was "poor to none." *Id.* at 7-8.
9  Further, Judge Kaplan determined her RFC was "no sustained work activity on a regular and
10 continuing basis at any exertional level" and that she was unemployable. *Id.* And, he found she had
11 difficulties with daily activities and social functioning, and frequent concentration deficiencies. *Id.*
12 Arik also notes the record is replete with references to her lack of concentration, memory lapses,
13 confusion, inability to sleep, manic and depressive episodes, being frozen by fear or anxiety, and
14 stress triggered by answering questions. *Id.* at 11-12. Further, the record documents her inability to
15 perform certain tasks, maintain a set schedule, or live independently. *Id.* Arik also notes the record
16 shows she has good periods and bad periods, which follow in cycles which may last for months. *Id.*
17 at 12. Thus, she argues, considering the record as a whole, there is not substantial evidence to find
18 she failed to appeal from March through May 2000, for any reason other than her mental
19 impairment. *Id.*

20 The Court agrees with Arik for two reasons. First, the Court notes that defendant appears to
21 misapprehend the pertinence of the term "understood" in SSR 91-5p. Arik's burden under SSR
22 91-5p is to "present[] evidence that mental incapacity *prevented* [her] from requesting timely review
23 . . . ." SSR 91-5p (emphasis added). While she may do this by showing she "lacked the mental
24 capacity to *understand* the procedures for requesting review," SSR 91-5p (emphasis added), the term
25 "understood" encompasses *knowledge* of the need to appeal, as well as the ability to *follow through*
26 on this knowledge. The Ninth Circuit in *Udd* did not focus on whether Udd had knowledge of the
27 *need* to appeal, but whether he "suffered from a serious mental impairment that severely limited his
28 *ability to do things for himself.*" *Udd*, 245 F.3d at 1101 (emphasis added). The Court contrasted

15

Udd, whose mother handled his mail and bills and "suffered from hallucinations and thought disorders, had poor insight and judgment, and tended to lose contact when he failed to take his medication," with Evans from *Evans v. Chater*, who functioned well, could care for himself, and handled his own affairs, as he "was fully oriented with no evidence of a thought disorder [and] maintained intact judgment[.]"  *Udd*, 245 F.3d at 1101.  On the mental impairment continuum between Udd and Evans, the Court finds that Arik's bipolar condition and cognitive difficulties clearly brings her closer to Udd than to Evans.

Further, the Court finds that defendant concedes its argument to Arik, by claiming she failed to appeal due to *stress* rather than *confusion*, though the Court finds confusion at issue as well.  The record shows Arik suffers from cyclical manic and depressive episodes, sufficiently severe so as to render her disabled.  Further, the record shows dealing with people, work tasks, and confusing situations triggers anxiety or stress, which prevents Arik from starting or finishing tasks.  Thus, defendant's claim that Arik's failure to timely appeal is attributable to stress is, under the facts of this case, a conclusion that her mental impairment prevented her from making a timely appeal.  This is because this record clearly links stress leading to immobility to her mental impairment.  Further, the record shows Arik has severe concentration issues.  Thus, the Court finds confusion and stress are so inextricably intertwined with Arik's mental impairment that the distinction which defendant attempts, may not be made on this record.

In fact, based on the *record as a whole*, *McCartey*, 298 F.3d at 1075, the Court is unable to find substantial evidence for Arik's failure to timely appeal, save for her severe mental impairment.  There is no evidence or suggestion of intentional delay or indolence.  It appears that the defendant's finding of substantial evidence was premised on considering *only* the periods Arik was not in the grip of a manic or depressive episode.  This, however, violates SSR 91-5p's mandate that *requires* defendant to consider "any mental or physical condition which limits the claimant's ability to do things for []herself."  Moreover, contrary to defendant's argument, the Court does not find Arik's February 1, 2005 written statement is substantial evidence that her severe mental impairment did not prevent her from sufficiently understanding the procedures for requesting review from March through May 2000.

16

### B.     Navigating the Administrative Process

Defendant argues that Arik had the proven ability to navigate the administrative process, as demonstrated by her success in prosecuting her claim, in propria persona, from February 1995 to July 1998, prior to retaining counsel. Cross-Mot. at 7. Defendant also notes that during the time Judge Kaplan found she suffered from a documented mental disability, she timely appealed his decision by herself. *Id.* And, defendant points out that Arik followed SSA instructions, and timely completed and filed many documents in prosecuting her claim, as well as calling SSA staff and undergoing interviews. *Id.* at 8. Defendant argues this is substantial evidence supporting the Council's finding that Arik could read and write sufficiently to understand the procedures for requesting review. *Id.*

Arik disagrees. Reply at 12-13. Arik notes in October 1995, she failed to timely appeal her initial benefits denial. *Id.* She then submitted unsigned papers in January 1996. *Id.* She missed her February 1996 SSA examination. *Id.* She did not request her claim be re-opened until three months later, in May 1996. *Id.* After defendant found good cause to re-open, she then missed her August 1996 examination, and failed to take any steps to prosecute her claim, leading to its denial. *Id.* She then timely requested an administrative hearing, and filed materials for it, but completely failed to return the hearing acknowledgment. *Id.* After terminating her attorney, she timely appealed Judge Kaplan's decision, but then did not appeal the Council's subsequent denial, until over four years later, after she contacted a non-attorney representative. *Id.*

The Court agrees with Arik that this history is not reasonably characterized as demonstrating a "proven ability" to navigate the administrative process without an attorney. This is especially so where Judge Kaplan documented that Arik's mental impairment worsened from 1993 through 1998. Further, this exacerbating history of documented manic and depressive cycles, prevents the Court, when considering the record as a whole, from finding defendant had substantial evidence to find Arik's mental impairment did *not* prevent her from sufficiently understanding the procedures for requesting review. The only way one could reach this conclusion on this record would be by considering only Arik's successes in prosecuting her claim, and ignoring her numerous failures. This, however, violates SSR 91-5p's mandate that *compels* consideration of "any mental or physical

17

condition which limits the claimant's ability to do things for []herself." The Court does not find that Arik's administrative procedural history is substantial evidence that her severe mental impairment did not prevent her from sufficiently understanding the procedures for requesting review from March through May 2000.

///

### C. Education and Hearing Testimony

Defendant argues Arik's education, and her ability to respond to questions at her administrative hearing with detail regarding past events, is substantial evidence that Arik had a sufficient education and facility with the English language to understand the procedures for requesting review. Cross-Mot. at 8. Arik argues that none of this addresses her documented severe mental impairment or how it impacts her ability to function. Reply at 14-15. The Court agrees that Arik's education and her ability to use the English language are not probative of the manner in which her documented severe manic and depressive cycles impacted the prosecution of her benefits claim. Defendant's argument is at best predicated on a partial review of the record, rather than a consideration of the whole. Again, this does not comport with SSR 91-5p's mandate. The Court does not find Arik's education or her ability to respond to questions at her administrative hearing with detail regarding past events, is substantial evidence supporting defendant's determination.

### D. Medical Evidence

Fourth, defendant argues that Arik has not met her burden under SSR 91-5p to "present[] evidence that mental incapacity prevented [her] from requesting timely review of an administrative action[.]" Cross-Mot. at 9. For support, defendant notes Arik has failed to explain why she waited more than four years to file for a hearing under SSR 91-5p. *Id.* at 10. Also, defendant claims the mere fact Arik was found mentally disabled at this time is insufficient to meet her burden. *Id.* at 11. And, defendant asserts that Arik's documented mental disability did not render her unable to understand the procedures for requesting review. *Id.* at 12. Arik disagrees, noting that the administrative record before the Appeals Council and the Court contains the same medical records which Judge Kaplan relied upon to find her severely mentally impaired with bipolar disorder, effective March 2, 1998. Reply at 15-16.

The Court agrees with Arik. The record, which contains medical records and her testimony, which Judge Kaplan found consistent, suffices to find Arik has met her burden under SSR 91-5p. Further, defendant's focus on the four years after Arik's failed appeal is misplaced. The proper focus under SSR 91-5p is only on the 60-day appeals window, not any subsequent period. In *Udd*, the plaintiff delayed 18 years in applying for a hearing under SSR 91-5p, but the Ninth Circuit only examined his 60-day appeals window, not the subsequent 18 years, in analyzing the degree of his mental impairment. *See Udd*, 245 F.3d at 1097-78, 1100-02. Finally, the Court has found it is unable to find substantial evidence for any reason for Arik's failure to timely appeal, except for her documented severe mental impairment.

## III. Adequate Notice

In her Reply, Arik claims an issue exits as to whether she actually received the March 14, 2000 Appeals Council's denial of her request for a review of Judge Kaplan's decision. Reply at 1, 5-7, 9-10. The Court does not address this issue for two reasons. First, Arik fails to present any evidence on it. All she presents is a facsimile sent by Arik's non-attorney representative to the SSA's Office of Hearings and Appeals, on March 6, 2006, in which he states that Arik had alleged "she does not remember receiving the AC notice for allowing her to file in Federal Court." AR at 8. He further claims, either Arik did not receive it due to moving and leaving no forwarding address, or if she did receive it, her mental impairment was so severe, she could not appeal at that time. *Id.*

The Court first notes that the inconsistency is not at issue, as he was stating alternative bases for Arik's alleged constitutional claim for an SSR 91-5p hearing. *See id.* Regardless, Arik's statements are inadmissible hearsay. If Arik wished to present her statements as evidence to the Court, she should have prepared declarations. Even if she had declared these statements, however, a failure to recall receiving a notice is not the same as not receiving it, nor is it the same as recalling not receiving it. Further, the moving allegations, which need only address a 60-day period, lack specifics. Thus, from an evidentiary standpoint, there is no notice issue before the Court.

In addition, the Court declines to address this issue on procedural grounds. Arik did not raise it in her November 2004 initial or August 2006 Amended Complaint. *See* Docket Nos. 1, 45. Instead, she raised it in her April 2008 Second Amended Complaint [Docket No. 58], but the Court

struck this claim as she had been given leave to amend only for the purpose of addressing a different issue. *See* Docket No. 66. In its Order, the Court advised her that it took no position as to whether or not she could raise this issue in her Motion. *See id.* She did *not,* however, raise it in her Motion. Instead, she waited until defendant had filed its Cross-Motion, and then she raised it in her Reply, denying defendant the chance to address it. Arik has known about this issue from March 2006, if not earlier. To sit on it, and raise such a substantial due process issue in her Reply, when it is not responsive to any issue raised in defendant's Cross-Motion, is inappropriate and unfairly prejudicial to defendant. As such, the Court does not reach Arik's alleged notice issue.

## CONCLUSION

Accordingly, the Court GRANTS plaintiff Maraina Arik's Motion for Summary Judgment (the "Motion") [Docket No. 75], and DENIES defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion (the "Cross-Motion") [Docket No. 76]. The Court REVERSES the Appeals Council's April 6, 2006 decision denying Arik an extension of time to seek district court review of Judge James M. Kaplan's January 26, 1999 decision. The Court REMANDS this matter to defendant for proceedings in accordance with this Order, including granting Arik the requested extension of time.

IT IS SO ORDERED.

September 30, 2008

_____
Saundra Brown Armstrong
United States District Judge